```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JERREL JAYNES                  : CIVIL ACTION
                               :
     vs.                       :
                               : NO. 05-2567
JAMES L. GRACE, ET. AL.        :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                    **December 27, 2006**

This matter has been brought before the Court by Respondents' Objections to the Report and Recommendation issued by the Honorable Jacob P. Hart, United States Magistrate Judge on March 22, 2006. After careful review of Judge Hart's Report and Recommendation and the state court record, we shall sustain the objections and deny the petition for habeas corpus in its entirety.

**Factual Background**

This case has its origins in an incident which occurred in the early morning hours of July 20, 1995 when one Willard McClam was shot twice in the back while sitting in his parked car on Price Street in the Germantown section of Philadelphia while waiting for a friend to finish working. As a result of this shooting, Mr. McClam was permanently paralyzed from the chest down. Immediately following the shooting and while lying in the street beside his car, Mr. McClam informed the investigating

police officer that "Jerrel" shot him, that "Jerrel" was approximately 21 years old, was wearing a green multi-colored shirt and a white hat and had been a passenger in a green Monte Carlo.  Approximately 4 hours later, Defendant-Petitioner Jerrel Jaynes was arrested for the shooting at his home.  Following a two-day jury trial in January, 1997, Mr. Jaynes was convicted of aggravated assault, carrying firearms on public streets or property, possessing an instrument of crime (a handgun), and criminal conspiracy and was sentenced to an aggregate term of 17 ½ to 35 years imprisonment.

On direct appeal, Petitioner alleged: (1) the evidence at trial was insufficient to sustain a guilty verdict, (2) the trial court erred in permitting the Commonwealth to introduce evidence that prior to the shooting, the victim had punched Petitioner's girlfriend, thereby showing motive, (3) several of the prosecutor's remarks in closing should have resulted in a mistrial, (4) the sentence was excessive and outside the sentencing guidelines and (5) his trial counsel was ineffective in failing to present alibi evidence from one James Wing.  On March 22, 2000, the Superior Court denied the appeal and affirmed the judgments of sentence in all respects.  Petitioner's request for allocatur to the Pennsylvania Supreme Court was denied on August 22, 2000.

Thereafter, Petitioner, first acting *pro se* and then with

appointed counsel, filed a petition for collateral relief under the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. §9541, *et. seq.*  The District Attorney's office filed a motion to dismiss that petition, which the PCRA court granted on November 19, 2002.  Petitioner timely appealed and argued that PCRA counsel was ineffective: (1) for failing to challenge trial counsel's ineffectiveness in telling the jury in his opening that defendant had juvenile adjudications, (2) for opening the door to the admission of motive evidence by stating in his opening that Defendant had no motive to shoot the victim, (3) for improperly advising him that the Commonwealth could impeach him with his juvenile drug conviction, thus vitiating his waiver of his right to testify, (4) for failing to object to the court's instruction to the jury on motive and (5) in failing to object to the prosecutor improperly cross-examining the victim on redirect by reading transcripts from prior proceedings as evidence instead of using them to refresh his recollection.  On April 16, 2004, the Superior Court affirmed the denial of PCRA relief and the Pennsylvania Supreme Court issued an Order denying Petitioner's Petition for Allowance of Appeal on November 24, 2004.

On May 31, 2005, Mr. Jaynes filed a counseled Petition for Writ of Habeas Corpus in this Court seeking relief on the following grounds:

    1.  That trial counsel was ineffective for opening the door to the issue of Petitioner's motive for committing the

    crime, when that issue had been precluded in a pre-trial ruling on a Motion in Limine.

    2.   That trial counsel was ineffective for failing to file Notice of an Alibi Defense and present James Wing as an alibi witness and that appellate counsel was ineffective for failing to raise this claim during the *nunc pro tunc* appeal.

    3.   That trial counsel failed to object to the Court's jury instruction on motive and that appellate counsel was ineffective for failing to raise this claim on direct appeal.

    4.   That the evidence of criminal conspiracy was insufficient to sustain the conviction.

    5.   That the prosecutor committed prosecutorial misconduct during the closing argument.

On June 27, 2005, this Petition was referred to Magistrate Judge Hart for a Report and Recommendation and on March 22, 2006, Judge Hart issued a comprehensive Report and Recommendation in which he found that the Pennsylvania Superior Court's interpretation of the affidavit submitted by the proposed alibi witness, James Wing, was erroneous and that the failure of Mr. Jaynes' trial counsel to file notice of and call Mr. Wing as an alibi witness resulted in a violation of Petitioner's Sixth Amendment right to the effective assistance of counsel.  As Judge Hart found no merit to any of Petitioner's other claims, he recommended that the writ of habeas corpus issue on this basis only and that the writ be stayed for a period of 180 days to permit the Commonwealth to re-try the petitioner.  On June 2, 2006[1], the

---

[1] The objections are timely filed as the time for filing them was extended via Court Orders dated April 13, May 24 and May 30, 2006.

Commonwealth objected to Judge Hart's Report and Recommendation only insofar as his findings on Petitioner's alibi witness claim and his recommendation to grant the writ are concerned.  We write now to address the Commonwealth's objections.

## **Discussion**

This matter was referred to Judge Hart pursuant to 28 U.S.C. §636(b)(1), which provides the following in pertinent part:

> **(b)(1)** Notwithstanding any provision of law to the contrary–
>
> ...
>
>> **(B)** a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.
>>
>> **(C)** the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
>
> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

As noted, the Commonwealth takes exception to only that portion

of Judge Hart's Report and Recommendation that found that Petitioner's trial counsel was ineffective for failing to notice and call James Wing as an alibi witness at trial.

28 U.S.C. §2254(d) sets forth the standard by which the federal courts are to resolve petitions seeking habeas corpus relief:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389, 430 (2000), the Supreme Court first had occasion to consider the 1996 amendment to Section 2254(d) made pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  In setting aside the death penalty of the petitioner in that case on the grounds that the Virginia Supreme Court's finding that petitioner's counsel was not ineffective was both contrary to and involved an unreasonable application of clearly established federal law, the Court observed:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

> of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-413, 120 S.Ct. at 1523. See Also, Douglas v. Cathel, 456 F.3d 403, 416 (3d Cir. 2006). For the writ to issue, the state court's application of federal law must be objectively unreasonable. Medina v. Diguglielmo, 461 F.3d 417, 427 (3d Cir. 2006), citing Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). It is not enough that the state court's decision was only incorrect or erroneous. Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005); Wiggins v. Smith, 539 U.S. 510, 520-521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Stated otherwise, the petitioner must show more than that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, he must demonstrate that Supreme Court precedent requires the contrary outcome. Outten v. Kearney, 464 F.3d 401, 413 (3d Cir. 2006); Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004).

It is by now well-established that "the proper standard for attorney performance is that of reasonably effective assistance" and that "when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of

reasonableness." Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984).  A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components: first, the defendant must show that counsel's performance was deficient, *i.e.* made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.  Id.  Second, the defendant must show prejudice, *i.e.,* that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.[2]

Under Strickland, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006), quoting Strickland, 466 U.S. at 690; Fountain v. Kyler, 420 F.3d 267, 275 (3d Cir. 2005).  Thus, as the Court in Strickland explained, significant deference is owed to the strategic decisions of counsel:

> Strategic choices made after thorough investigation of law
> and facts relevant to plausible options are virtually
> unchallengeable; and strategic choices made after less than
> complete investigation are reasonable precisely to the
> extent that reasonable professional judgments support the

---

[2]  "It is also past question that Strickland qualifies as 'clearly established federal law, as determined by the Supreme Court of the United States.'" Outten, 464 F.3d at 414, quoting Williams, 529 U.S. at 391, 120 S.Ct. at 1512.

>    limitations on investigation....Moreover, the reasonableness
>    of counsel's actions may be determined or substantially
>    influenced by defendant's own statements or actions.

Shelton, 464 F.3d at 423-424, quoting Strickland, 466 U.S. at 691.  See Also, Outten, 464 F.3d at 417.  See Also, Rolan v. Vaughn, 445 F.3d 671, 679 (3d Cir. 2006)("Generally, federal courts defer to state appellate court determinations of fact.") and Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004)(same).

In this case, the record reflects that Petitioner raised the sole issue with which are now concerned on direct appeal.  In denying the appeal and affirming the conviction, the Pennsylvania Superior Court utilized the following standard articulated by the Pennsylvania Supreme Court in Commonwealth v. Wayne, 720 A.2d 456, 462 (Pa. 1998) and Commonwealth v. Davis, 541 A.2d 315, 318 (Pa. 1988) rather than Strickland:

>    We inquire first whether the underlying claim is of arguable
>    merit; that is, whether the disputed action or omission by
>    counsel was of questionable legal soundness.  If so, we ask
>    whether counsel had any reasonable basis for the
>    questionable action or omission which was designed to
>    effectuate his client's interest.  If he did, our inquiry
>    ends.  If not, the appellant will be granted relief if he
>    also demonstrates that counsel's improper course of conduct
>    worked to his prejudice, i.e., had an adverse effect upon
>    the outcome of the proceeding....Furthermore to prove that
>    counsel was ineffective for failing to call an alibi
>    witness, appellant must also show that, 1) the witness
>    existed, was available to testify for the defense; 2)
>    counsel was aware of the existence of the witness, or should
>    have know of his existence and availability; 3) the proposed
>    witness was ready, willing and able to testify on behalf of
>    appellant; and 4) the absence of the proposed testimony was
>    so prejudicial as to have denied appellant a fair trial.
>    Commonwealth v. Lopez, 739 A.2d 485, 496 (Pa. 1999) citing
>    Commonwealth v. Hall, 701 A.2d 190, 201 (Pa. 1997).

Superior Court Memorandum Opinion of March 22, 2000 at pp. 13-14.

In reviewing the affidavit of James Wing which was attached to Mr. Jaynes' supplemental brief, the Superior Court noted that it recited the following facts: 1) he was a housemate of appellant during the time of the shooting; 2) his room was situated such that he could observe when people walked up and down the stairs; 3) between 8:30 and 9:30 of the night of the shooting, appellant took his niece upstairs to baby-sit; 4) before dozing off at around 2:00 a.m., he had not seen appellant go back downstairs; 5) he had informed Mr. Jaynes' trial counsel of the above facts some 3-4 weeks before trial; and 6) he was present at the trial and was willing and available to testify if called upon.  The Superior Court then went on to hold:

> We believe that Mr. Wing's affidavit satisfies the first three elements of Lopez: the witness existed and was present, counsel was aware of the witness and the witness was willing to testify...(citation omitted) Mr. Wing's affidavit, however, fails to allege sufficient facts to create an alibi defense that would, if absent from trial, so prejudice the defendant that he could not receive a fair trial. Mr. Wing alleges that he saw appellant between 8:30 and 9:30, but does not claim with assurance that appellant did not leave the house...(citation omitted) Therefore, appellant has not fulfilled the threshold requirements to establish a claim for relief due to counsel's ineffectiveness for failing to call an alibi witness.

Superior Court Memorandum Opinion of March 22, 2000 at p. 15.

Although the Superior Court did not cite specifically to Strickland, it does appear that the ineffectiveness test which it employed was substantively a correct recitation of federal law.

Indeed, the state court first considered whether the failure of Petitioner's counsel to call Mr. Wing "was of questionable legal soundness" and "whether counsel had any reasonable basis for the questionable action or omission" (the decision to not call Mr. Wing to testify as an alibi witness) which was designed to effectuate his client's interest." We now consider whether by its application of the cited Pennsylvania state law, the Superior Court reasonably applied federal law.

According to Mr. Wing's affidavit, (1) due to his recently having had a stroke and a neck operation, he had difficulty sleeping and spent most nights watching television in his room, which was located in the front of the second floor of the house he shared with Mr. Jaynes and his family; (2) the chair in which he sat faced the stairs leading down to the first floor and he could therefore see anyone coming up or down the stairs; (3) on the night of the shooting, Mr. Jaynes had offered to baby-sit his niece and took the child upstairs to his bedroom, located at the rear of the second floor of the house to watch television; (4) Mr. Wing started to doze off around 2 a.m. and he heard a loud banging at the front door, which turned out to be the police officers coming to arrest Mr. Jaynes; and (5) he did not believe there was any possible way that Mr. Jaynes could have left the house that night without Mr. Wing having seen him or without him having asked either his mother or Mr. Wing to look after his

niece.

In reviewing the affidavit in conjunction with the Superior Court's recited version of it, we agree with Judge Hart that the Superior Court off-handedly dismissed Mr. Wing's statement that "[t]here was no possible way that Jerrel Jaynes left the house that night, without me seeing him go down the stairs or asking Cynthia [Jaynes] or myself to watch the child."  Contrary to the finding of the Superior Court, we believe that Mr. Wing *did* claim with assurance that Mr. Jaynes did not leave the house.  Thus, we find that in this respect, the state court's decision was erroneous.  As noted by Judge Hart, however, this conclusion does not end our inquiry.

The question as framed by Strickland is whether trial counsel's representation fell below an objective standard of reasonableness, *i.e.*, whether counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment and whether these errors resulted in prejudice, *i.e.*, "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688. It is here that we must part company with Judge Hart.

Judge Hart concluded that because the only witness linking Petitioner directly to the crime was the victim and there were some inconsistencies in his testimony (as to whether the front headlight of the car in which the assailant was riding was out

12

entirely or merely dimmer than the other and as to whether Petitioner was clean-shaven or had a goatee and sideburns at the time of the shooting), there was a reasonable probability that the inclusion of an alibi defense would have changed the outcome of the trial.  While we hold Judge Hart in the highest regard, it appears to this Court that he disregarded the fact that Petitioner's trial counsel brought out the inconsistencies in Mr. McClam's testimony at trial and thus these were presented and argued to the jury and the jury considered them in issuing its verdict.  The record in this matter further evinces that, despite the inconsistencies into the details of the clothing worn by and the car in which his assailant was riding, the victim without hesitation immediately identified the petitioner as the person who shot him while he lay in the street and believed he was dying, and that his testimony on all of the other details of the shooting, including the identity of his assailant, was consistent throughout the preliminary hearing and trial of this matter.

We also find that, despite Mr. Wing's belief that Mr. Jaynes could not have left the house that night without his having seen him go down the stairs, it also appears from his affidavit that there would have been ample fodder with which to cross-examine him.[3]  We do not know for sure what trial counsel's impression

---

[3] Indeed, Mr. Wing was no doubt a somewhat biased witness, having lived with the Jaynes family since Petitioner was a child.  His ability to observe and recall events may also have been subject to question given that he had suffered a stroke only one month before the shooting and his admission

was of Mr. Wing as a witness following his interview or what his strategy may have been with regard to Mr. Wing because no evidentiary hearing was conducted on this point.  However, as the affidavit suggests that Mr. Wing's alibi testimony may not have been as air-tight as Petitioner would have us believe and as we are required to give deference to trial counsel's strategy, we cannot say with assurance that Mr. Savino's representation and trial strategy was objectively unreasonable.

Furthermore, as <u>Strickland</u> and its progeny also make clear, the burden of demonstrating objective unreasonableness falls squarely on the Petitioner with significant deference being given to strategic decisions of counsel.  Here, the defendant proffers only the affidavits of James Wing and himself (which essentially echoes that of his proposed alibi witness).  There is absolutely no evidence whatsoever as to what his trial counsel's trial strategy was or why Mr. Wing was not called to testify.  In the absence of such evidence, we are constrained to presume that Mr. Savino affirmatively decided not to call Mr. Wing for, at least, the reasons discussed in footnote 3 and that this decision was objectively reasonable.

For these reasons, we cannot find that the state court's decision to deny Petitioner post-trial relief on the grounds that

---

that he started to doze off at around 2:00 a.m. at which time he heard the police officers at the front door.  The police records indicate that the police arrived at Mr. Jaynes' home to arrest him at 5:10 a.m. on July 20, 1995.

his trial counsel was ineffective in not calling Mr. Wing as an alibi witness was either contrary to or involved an unreasonable application of federal law as enunciated in <u>Strickland</u>, or was based on an unreasonable determination of the facts in light of the evidence presented.  We shall therefore sustain the Commonwealth's objection to the Report and Recommendation of March 22, 2006 and shall deny the petition for writ of habeas corpus on this ground as well.

   An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERREL JAYNES                    : CIVIL ACTION
                                 :
    vs.                          :
                                 : NO. 05-2567
JAMES L. GRACE, ET. AL.          :

**ORDER**

    AND NOW, this 27th day of December, 2006, upon consideration of the Respondents' Objections to the Report and Recommendation issued by United States Magistrate Judge Jacob Hart on March 22, 2006 and Petitioner's Response thereto, it is hereby ORDERED that the Objections are SUSTAINED, the remainder of the Report and Recommendation is APPROVED and ADOPTED and the Petition for Writ of Habeas Corpus is DENIED in its entirety.

                                               BY THE COURT:


                                               s/J. Curtis Joyner
                                               J. CURTIS JOYNER,           J.